IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : Chapter 11 |
| KAISER ALUMINUM CORPORATION, et al., | : Bankruptcy Case No. 02-10429-JKF |
| Debtors. | |
| PENSION BENEFIT GUARANTY CORP., | |
| Appellant, | |
| v. | : Civil Action No. 04-145-JJF |
| KAISER ALUMINUM CORPORATION, et al., | |
| Appellees. | |

Kathleen M. Miller, Esquire of SMITH, KATZENSTEIN & FURLOW LLP, Wilmington, Delaware.
Of Counsel:  James J. Keightley, Esquire, General Counsel; Jeffrey B. Cohen, Esquire, Deputy General Counsel; Michael C. Miller, Esquire, Assistant General Counsel; Paula J. Connelly, Esquire, Senior Counsel; and James L. Eggeman, Esquire of the OFFICE OF THE GENERAL COUNSEL OF PENSION BENEFIT GUARANTY CORP., Washington, D.C.
Attorneys for Appellant.

Daniel J. DeFranceschi, Esquire and Kimberly D. Newmarch, Esquire of RICHARDS, LAYTON & FINGER, Wilmington, Delaware.
Of Counsel:  Gregory M. Gordon, Esquire, Daniel P. Winikka, Esquire and Eric N. McKay, Esquire of JONES DAY, Dallas, Texas.
Attorneys for Appellees.

**MEMORANDUM OPINION**

March 30, 2005

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal by Pension Benefit Guaranty Corporation ("PBGC") from the February 5, 2004 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (A) Determining that the Financial Requirements for a Distress Termination of the Debtors' Defined Benefit Pension Plans Under ERISA Section 4041(c)(2)(B) are Satisfied; (B) Approving a Distress Termination of Certain Pension Plans; (C) Authorizing Implementation of Replacement Plans; and (D) For Certain Related Relief. For the reasons set forth below, the February 5, 2004 Order of the Bankruptcy Court will be affirmed.

I.   PARTIES' CONTENTIONS

PBGC is a government agency that regulates the termination of defined benefit pension plans and administers the termination insurance program for those plans. When an insured plan terminates without enough assets to pay the benefits promised under the plan, PBGC becomes the trustee of the plan and pays participants their benefits up to certain statutory limits.

By its appeal, PBGC contends that the Bankruptcy Court erred in finding that the Debtors met the statutory requirements for a distress termination of four of their pension plans. Specifically, PBGC contends that the Bankruptcy Court erred in aggregating all of the Debtors' pension plans together, and by

1

applying the "fair and equitable" standard of Section 1113 of the Bankruptcy Code. PBGC contends that Title IV of ERISA requires each of the Debtors' pension plans to be looked at individually to determine whether the sponsor and each of its controlled group members meets the statutory test for reorganization in bankruptcy, i.e. whether unless the plan is terminated, the debtor "will be unable to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business outside the Chapter 11 reorganization process." 29 U.S.C. § 1341(c)(2)(B)(ii)(IV). PBGC also contends that the "fair and equitable" test under Section 1113 of the Bankruptcy Code has no place in the termination inquiry and the only standards that are applicable are those contained in Title IV of ERISA. Accordingly, PBGC contends that the Bankruptcy Court's decision should be reversed and remanded with instructions to apply the appropriate test under 29 U.S.C. § 1341 to each individual plan.

In response, the Debtors contend that Section 1341 of ERISA does not require a plan-by-plan analysis and that such an analysis would be unworkable. The Debtors contend that while Section 1341 uses the singular word "plan," there is no indication that Congress intended the singular to mean that each of a debtor's plans must be viewed without regard to its obligations under other plans. The Debtors contend that Section 1341 does not expressly address the manner in which it should be

2

applied to a debtor with multiple plans and that under Section 1341, Congress gave the bankruptcy courts full latitude to assess the effect of the failure to terminate all of the debtor's pension plans on the debtor's ability to reorganize. The Debtors further contend that it is appropriate to consider the policies and provisions of the Bankruptcy Code when interpreting Section 1341 based on the legislative history of ERISA Section 1341.

## II.  STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the United States Court of Appeals for

the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a <u>de novo</u> basis in the first instance. <u>In re Telegroup</u>, 281 F.3d 133, 136 (3d Cir. 2002).

## III. DISCUSSION

The standard for terminating single-employer pension plans is provided in 29 U.S.C. § 1341. Under this section, plans may be terminated voluntarily by an employer or involuntarily by the PBGC. If a plan is terminated involuntarily by the PBGC, it may do so without regard to the existence of a collective-bargaining agreement. 29 U.S.C. § 1341(a)(3). However, any voluntary termination of a plan by an employer is not permitted if the termination would violate the terms of an existing collective-bargaining agreement. <u>Id.</u>

With respect to voluntary termination, an employer may proceed with a "standard termination" if it has sufficient assets to pay all its benefit commitments. If the employer does not sufficient assets to meet these commitments, the employer must demonstrate that it is in financial "distress" as defined in 29 U.S.C. § 1341(c). Section 1341(c) sets forth several requirements, including whether the debtor can establish certain distress criteria.

In this case, the applicable distress criteria is the reorganization in bankruptcy test (the "Reorganization Test") set forth in Section 1341(c)(2)(B)(ii)(IV). The Reorganization Test

4

has four requirements: (1) the company must have filed a chapter 11 petition; (2) its bankruptcy case must not have been dismissed, (3) the company must submit to PBGC a request for bankruptcy court approval of the plan termination, and (4) the bankruptcy court must determine that "unless the plan is terminated, such person will be unable to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business outside the chapter 11 reorganization process and approv[e] the termination." 29 U.S.C. § 1341(c)(2)(B)(ii)(IV).

In its decision, the Bankruptcy Court concluded that it was not limited to a plan-by-plan analysis, but could look at the Debtors' plans in the aggregate. In reaching this conclusion, the Bankruptcy Court recognized the lack of binding precedent on point, but found some persuasive authority in In re Wire Rope Corp. of America, Inc., 287 B.R. 771 (Bankr. W.D. Mo. 2002). In Wire Rope, the bankruptcy court analyzed the debtors' plans in the aggregate; however, as the Bankruptcy Court noted, the arguments and issues raised in Wire Rope were different than the arguments and issues raised in this case. Nevertheless, the Bankruptcy Court concluded that its interpretation struck the appropriate balance between the ERISA statute and Section 1113 of the Bankruptcy Code which pertains to the termination and modification of collective bargaining agreements. Under this

5

provision, a debtor seeking to modify a collective bargaining agreement must make a proposal to the union that "assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably." 11 U.S.C. § 1113(b)(1); see also 11 U.S.C. § 1113(c)(3) (bankruptcy court may only approve application for rejection of collective bargaining agreement if "the balance of the equities clearly favors rejection of such agreement"). The Bankruptcy Court concluded that an interpretation of the ERISA statute which would require the Debtors to pick and choose those groups of employees and retirees whose pension benefits would continue and those whose benefits would terminate would run afoul of the fair and equitable treatment provision of Section 1113 of the Bankruptcy Code and conflict with Congress' intentions for the reorganization of debtors' estates. (D.I. 8 at A261-264).

Reviewing the decision of the Bankruptcy Court and the parties' arguments in light of the relevant legal principles and the applicable standard of review, the Court concludes that the Bankruptcy Court's decision was not erroneous. Although Section 1341 of ERISA uses the term "plan" in the singular, the Court is not persuaded that the singular reference to the term "plan" mandates a plan-by-plan analysis as urged by PBGC. Indeed, the statute does not expressly mandate an approach to take for an employee with multiple plans, and there is no binding judicial

6

precedent on point.  Absent an express statutory directive or any binding precedent, the Court is persuaded by the Bankruptcy Court's analysis which construes Section 1341 of ERISA *in pari materia* with Section 1113 of the Bankruptcy Code.  As the United States Supreme Court has recognized, PBGC "can claim no expertise" in the area of bankruptcy law, and the provision of ERISA "do take account of other areas of federal law."[1]  PBGC v. LTV Corp., 496 U.S. 633, 646 & n.7 (1990); 29 U.S.C. § 1144(d) (ERISA saving clause which directs that "nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States").  In addition, the Court concludes that the Bankruptcy Court's factual findings that the Debtors satisfied the requirements for distress termination of their plans are supported by the record and not clearly erroneous.  Accordingly, the Court will affirm the decision of the Bankruptcy Court.

## CONCLUSION

For the reasons discussed, the Bankruptcy Court's February 5, 2004 Order assessing and approving the distress termination of

---

[1] Cf. In re Sewell Manufacturing Co., Inc., 195 B.R. 180, 184-185 (Bankr. N.D. Ga. 1996) (rejecting PBGC's argument that Section 1341(c)(2)(B)(ii) of ERISA required a debtor to file a plan of reorganization and disclosure statement as a necessary prerequisite to a bankruptcy court's distress termination analysis and recognizing case law holding that "ERISA may not be interpreted so as to confound the clear intentions of the Bankruptcy Code's drafters") (citations omitted).

the Debtors' plans and authorizing implementation of a replacement plan will be affirmed.

An appropriate Order will be entered.

Case 1:04-cv-00145-JJF    Document 16    Filed 03/30/2005    Page 9 of 9

8